DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| John S. Meacham, et al., | ) | |
| | ) | CASE NO. 5:09 CV 1053 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| United States Department of Housing and | ) | |
| Urban Development, | ) | |
| | ) | |
| Defendant. | ) | |

This case is an administrative appeal pursuant to 49 CFR 24.10(g) and the Administrative

Procedures Act (APA), 5 U.S.C. § 701 et seq., of a final determination by the defendant United

States Department of Housing and Urban Development (HUD) issued August 29, 2008 (the

HUD Determination).  In its determination, HUD concluded that plaintiffs are not eligible for a

replacement housing payment (RHP) with respect to the City's taking of the property located at

630 Diagonal Road in Akron (the Residence) because they did not occupy the Residence, which

was acquired by the City of Akron in connection with a federally assisted redevelopment project,

as a principal, primary residence at the time of the Initiation of Negotiations (ION) by the City to

acquire the Residence.[1]

In their complaint, plaintiffs claim that the HUD Determination is arbitrary, capricious,

and unsupported by substantial evidence, and requests that the Court vacate HUD's

determination, award compensatory damages, and award attorney fees.  ECF 1.  HUD has moved

---

[1]Plaintiffs eligibility for a replacement housing payment is separate from their eligibility
for relocation assistance.  Plaintiffs have received $4,187.50 from the City of Akron in
relocation assistance benefits.  ECF 42.

(5:09 CV 1053)

for judgment on the record, arguing that the HUD Determination is supported by the

administrative record and is neither arbitrary nor capricious.  ECF 23.  Plaintiffs opposed the

government's motion for judgment on the record (ECF 24), to which the government replied

(ECF 33) and plaintiffs responded (ECF 35).  For the reasons contained herein, defendant's

motion for judgment on the record is GRANTED.

    I.  BACKGROUND FACT SUMMARY AND THE PREVIOUS CASE: 5:06 CV 2447

       Plaintiffs purchased the Residence in 1981.  In 1998 there was a fire, and as a

consequence,  plaintiffs moved out of the Residence.  Later, in 2003, the ownership of the

Residence was transferred by plaintiffs to Thomas Faulknier.  Mr. Faulknier's loan documents

for the Residence states that he occupied the Residence.

       The Residence is located in a blighted area in Akron, Ohio known as the Crouse

Redevelopment District.  This area was being redeveloped by the City of Akron utilizing HUD

funds.  Because HUD funds were utilized for the Crouse Redevelopment Project, the Uniform

Relocation Assistance and Real Property Acquisition Polices Act of 1970 (URA) applies to this

case.

       The City of Akron needed to acquire the Residence as part of the redevelopment project.

The City first attempts to purchase a property needed for redevelopment from the owner before

resorting to an appropriation proceeding.  However, efforts to purchase the Residence in 2003

were unsuccessful, and the City of Akron appropriated the Residence through an eminent

domain proceeding in Summit County Probate Court.  AR 330.  At some point before the

2

(5:09 CV 1053)

eminent domain proceeding,[2] the Meachams reacquired an interest in the property from Mr. Faulknier through a land contract. The appropriation proceeding was was brought by the City against the Meachams and several others, including Thomas Faulknier and Countywide Home Loans, Inc. Plaintiff Barbara Meacham testified at the eminent domain proceeding for the Residence in 2005 that the Meachams lived at the house "on and off. Because of all the work and repairs that have to have been done on the house I've had to stay in other places for a time, for a short time." AR 219-220.

As a result of the eminent domain proceeding, a jury awarded $220,000 as just compensation for the taking of the Residence. The City paid the jury award, which was disbursed on November 17, 2005 to cover prorated taxes and the mortgage payoff, with the balance of $94,388.45 going to Barbara Meacham.

At the time the City of Akron advised plaintiffs of various rights under the URA, including relocation assistance, and plaintiffs were directed to a "comparable" dwelling at 590 Diagonal Road, Akron, Ohio. The "asking price" of the comparable dwelling was $299,000. It so happens that this comparable dwelling was right next door the Residence. The City of Akron offered the plaintiffs $79,000 as a RHP, which was the difference between the asking price of the comparable dwelling at 590 Diagonal Road ($299,000) and the jury award of $220,000 for the taking of the Residence by eminent domain.

---

[2] Plaintiffs entered into an unrecorded land contract with Faulknier in October 2003. Even if plaintiffs could be construed to be the owner of the property as a result of the October 2003 land contract, that ownership occurred only 30 days before the ION of November 2003.

(5:09 CV 1053)

On or about December 28, 2005, plaintiffs filed an administrative complaint with HUD challenging whether the property at 590 Diagonal Road, Akron, Ohio was a "comparable" replacement unit within the meaning of the URA.   By letter dated July 17, 2006, HUD issued its determination that "the replacement housing offered at 590 Diagonal Road was comparable, functionally equivalent, and met the City's obligation to identify and offer a comparable unit before displacement could occur."

Plaintiffs were dissatisfied with HUD's determination that the 590 Diagonal Road property was comparable to the Residence.  As a consequence, plaintiffs filed a lawsuit in this Court which, among other things, appealed HUD's determination that the property located at 590 Diagonal Road in Akron, Ohio was comparable to the Residence for the purposes of calculating the RHP of $79,000, which plaintiffs alleged was insufficient.

During the proceedings in the 2006 Case, the government moved the Court to remand the case to the administrative agency to further develop facts.  The point of the government's motion to remand was that the Meachams may not even be eligible for a RHP.  In moving for remand, the United States alleged as follows:[3]

> "The United States moves this Court to remand this case to the Administrative Agency to further develop the facts.  It appears that **Plaintiffs may not be entitled to receive any purchase assistance benefits.** (Emphasis added).
> . . . .
>
> Congress intended to provide purchase assistance benefits to owner occupants who are displaced.  In order to ensure that the system is not manipulated to create windfall recoveries, a 180 day ownership and occupancy requirement was

---

[3]Case No. 5:06CV2447,  ECF 36.

4

(5:09 CV 1053)

> imposed.
>
> 'In addition to payments otherwise authorized by
> this sub-chapter, the head of the displacing agency
> shall make an additional payment not in excess of
> $22,500 to any displaced person who is displaced
> from a dwelling actually owned and occupied by
> such displaced person for not less than one hundred
> and eighty days prior to the initiation of
> negotiations for the acquisition of the property.'
>
> 42 U.S.C. § 4623(a)(1).
>
> 'A displaced person is eligible for the replacement
> housing payment for a 180-day homeowner-
> occupant if the person:
>
> (1) Has actually owned and occupied the
> displacement dwelling for not less than 180 days
> immediately prior to the initiation of negotiations;
> and'
>
> 42 C.F.R. § 24.401(a)(1).
>
> 'Initiation of negotiations is defined at 49 C.F.R. §
> 24.2(15)(i).
>
> Whenever the displacement results from the
> acquisition of real property by a Federal Agency or
> State Agency, the *initiation of negotiations* means
> the delivery of the initial written offer of just
> compensation by the Agency to the owner or
> owner's representative to purchase the real property
> for the project....'"

The government's motion for remand (ECF 36) claimed that "a key factual determination

is whether plaintiffs had ownership interest in the property at issue for 180 days prior to

5

(5:09 CV 1053)

initiation of negotiations." The motion for remand declared:[4]

> A remand would permit the parties to document the ownership
> issue and to provide any other supplemental information which
> they deem necessary to a decision. A remand would also address
> Plaintiffs' concerns about matters "missing" from the
> Administrative Record [Appellants' Brief at pg. 9]. While the
> United States disagrees that anything is missing from the
> Administrative Record, remanding the proceedings would give all
> parties an opportunity to present an organized package of
> information for consideration by the administrative agency.

The Court subsequently filed a Memorandum Opinion which declared in part as follows:[5]

> At the time this action commenced, plaintiffs, a married
> couple, resided at 630 Diagonal Road, Akron, Summit County,
> Ohio ("the Residence"), located within a district called the Crouse
> Redevelopment District. The Residence had already been
> appropriated by the City of Akron through an eminent domain
> proceeding in Summit County Probate Court which had been
> brought by the City against the Meachams and several others,
> including Thomas Faulknier and Countywide Home Loans, Inc.
> On September 2, 2005, a jury awarded $220,000 as just
> compensation for the taking. The City deposited the funds which
> were disbursed on November 17, 2005 to cover prorated taxes and
> the mortgage payoff, with the balance of $94,388.45 going to
> Barbara Meacham. The City was then entitled to immediate
> possession of the Residence.[6]
>
> The redevelopment project for which the City of Akron
> sought title to the Residence through eminent domain was funded
> in whole or in part by HUD, which accounts for the applicability of
> the URA to this case.

---

[4]Case No. 5:06CV2447, ECF 36, pg. 3.

[5]ECF 49.

[6]Plaintiffs never appealed the verdict of the Probate Court; related eviction proceedings
in Akron Municipal Court were closed on October 17, 2006, following the filing of the
2006 Case.

6

(5:09 CV 1053)

***

In its motion to remand for further agency action, HUD argues that it is now questionable whether these plaintiffs actually had an ownership interest in the property at issue. Relying on exhibits attached to the motion but not in the administrative record, the motion states:

> A key factual determination is whether Plaintiffs had an ownership interest in the property at issue for 180 days prior to initiation of negotiations. Plaintiffs sold the property in question in 2001. [Ex. A]. They entered into an unrecorded land contract to repurchase the property on October 19, 2003 after learning of Akron's interest in purchasing the property. [Ex. B]. On November 19, 2003, a formal written offer of just compensation was delivered to Mr. Meacham and the Meacham's attorney at a meeting with City of Akron representatives. [Ex. C]. John Meacham executed an unrecorded assignment of his interest in the unrecorded land contract to Barbara Meacham on August 15, 2005. [Ex. D]. Plaintiffs recorded a different land contract on September 1, 2005 which was the day of the eminent domain trial. That land contract was executed on August 31, 2005 and was only in Mrs. Meacham's name. [Ex. E]. The city of Akron obtained title through eminent domain on September 1, 2005. [Ex. F].

Motion to Remand, at 2 (ECF No. 36). HUD suggests that plaintiffs have attempted to manipulate title to the Residence, perhaps to avoid an anticipated lien for a 2001 tax debt.

In any event, HUD argues that, even if the October 19, 2003 land contract is valid and enforceable, it was in existence for only 30 days before the November 19, 2003 offer of just compensation. Under 49 C.F.R. § 24.401, a replacement housing payment is made only to a 180-day homeowner-occupant who has, *inter alia*, "actually owned and occupied the displacement dwelling for not less than 180 days immediately prior to the initiation of negotiations[.]"

7

(5:09 CV 1053)

\*\*\*

>   If the plaintiffs are not displaced *owner*-occupants, then
>   they are not entitled to receive a replacement housing payment
>   under 49 C.F.R. § 24.401 and an appeal to determine whether 630
>   Diagonal Road is a true "comparable" is pointless.

\*\*\*

>   The current administrative record does not document
>   ownership of the Residence and this Court cannot consider
>   exhibits attached to the motion to remand.  Arguably, the Court
>   might be able to take judicial notice of documents which are a
>   matter of public record; however, the attachments to the motion are
>   not certified or otherwise authenticated and the Court, therefore, is
>   inclined not to assume their authenticity for purposes of an
>   administrative appeal.  The Court would prefer that it would have
>   before it a full administrative record before conducting any appeal.
>   Plaintiffs themselves have argued in their appellant's brief (ECF
>   No. 33) that the administrative record before this Court is
>   incomplete.  *Id.* at 9.

>   The Court will GRANT the motion (ECF 36) of HUD to
>   remand this matter for further proceedings, including a more
>   complete development of the record relating to the history of
>   ownership of the Residence at 630 Diagonal Road.

The point of the government's motion to remand the 2006 Case was that the Meachams

may not even be eligible for a RHP.  RHP eligibility requires both ownership and occupancy, as

further developed below.  In order to be eligible for a RHP, both ownership and occupancy

requirements must be satisfied and the failure of either factor is disqualifying.

## II.  THE HUD DETERMINATION ON REMAND FROM THE 2006 CASE

Upon remand, HUD determined that the plaintiffs were not eligible for a RHP on the

grounds that the Meachams did not satisfy the occupancy requirements at the time of initiation of

(5:09 CV 1053)

negotiation for acquisition of the Residence.  In so concluding, HUD explained the denial of

eligibility in a letter to plaintiffs dated August 29, 2008,[7] as follows:

> " . . . the court remanded the case of ownership and replacement housing
> payments back to HUD for further review and determination.  As a result, we are
> now in possession of documents (from both you and the City) showing additional
> history on the property going back to the original initiations of negotiations for
> the site which began in November of 2003.  Previously, our history of
> documentation only started with an additional appraisal in March of 2005, and
> then the offering of a comparable unit to you in October of 2005.
>
> We have determined that the initial formal written offer to purchase made to the
> owner of record was tendered in November of 2003 (owner of record - Thomas
> Faulknier).  The offer in 2003 also contained in the formal "Notice of Intent" to
> acquire with HUD's information brochure on benefits.  Prior to this, in June of
> 2003, Mr. Meacham called the City and informed them that he was really the
> owner but had quit claimed the deed to a family friend for personal reasons.  The
> ownership vers[u]s tenancy issue is now unimportant because we have
> determined that your family did not occupy the home acquired by the City as a
> princip[al] primary residence at the Initiation of  Negotiations (ION) for the site.
> As a matter of fact, your family had not occupied the home for several years prior
> to November of 2003 because of a fire that occurred in June of 1998 at the
> property.  When the City first set out the site appraiser in August of 2003, the
> property was vacant, not occupied by you.  The second appraiser in 2005 also
> commented on the vacancy of the home.  The City's files also state that back in
> November of 2003, you, Mr. Meacham, admitted that you and your family were
> not living at the property because of the fire.  After the fire, the property was
> secured and maintained, but not occupied as a primary residence by our family.
> We understand that your family was living elsewhere and as such, was not
> displaced from the home acquired.
> . . . .
>
> While you remained eligible for reasonable, actual moving
> expenses to move personal property from the acquired home, as
> well as all incidental costs in transferring the property to the City,
> you are not entitled to a replacement housing payment because you
> did not live in the home when the City began acquisition
> proceedings at the ION.  The City should have understood this

---

[7]Attached as Appendix 1.

(5:09 CV 1053)

very important fact, and counseled you on the specifics regarding
actual eligibility for this type of payment. It is with regret that we
inform you that you are not eligible for a replacement housing
payment under the Uniform Act due to the previously stated
occupancy issue. However, the City may continue to assist you in
finding and occupying replacement housing under a local
relationship policy. Please contact the City for any further
discussion on your eligibility for a replacement housing payment.
It is for the occupancy reason that HUD is denying eligibility, a
decision entirely supported the Uniform Act regulations and the
law.

In closing, HUD considers a "displaced person" (49 CFR 24.2(a)(9)) as someone
who moves from the property or moves his/her belongings from the property as a
direct result of a notice of intent to acquire. While you may have had personal
property to move, you were not displaced from the property because you did not
live there day to day, on a regular basis, as a primary residence. We do not
consider a person displaced (49 CFR 24(a)(9)(ii)) if he/she moves into the
property after acquisition . . . or moves into the property for the purpose of
obtaining assistance under the Act. . . .

III.  THE PRESENT CASE: 5:09 CV 1053

On May 7, 2009, the Meachams filed the instant lawsuit, appealing the HUD

Determination that plaintiffs were not eligible for a RHP.  Plaintiffs' appeal asserts that  HUD's

determination of denying RHP eligibility is based on an erroneous determination of facts and

erroneous construction of the URA, and claims that every part of the HUD Determination is

arbitrary, capricious and unsupported by substantial evidence.

The government filed the administrative record in this case as ordered by the Court.  ECF

20.  Plaintiffs took issue with the completeness of the record, and moved to supplement the

record.  ECF 25.  Ultimately, the government stipulated to the inclusion of plaintiffs'

supplemental documents in the record without conceding that the documents were received by

10

(5:09 CV 1053)

HUD or conceding the relevance of the documents.  See ECF 38 and 41.  The government's

stipulation moots the issue raised by the Meacham's regarding the completeness of the

administrative record.

### IV.  THE GOVERNMENT'S MOTION FOR JUDGMENT ON THE RECORD

The government has moved for judgment on the record (ECF 23) on the grounds that in

order to be eligible to receive the replacement housing payment at issue, plaintiffs must have

owned and occupied the Residence for 180 days prior to initiation of negotiations.  HUD

determined that plaintiffs were ineligible for a replacement housing payment because they did

not meet the 180 day occupancy requirement when the initiation of negotiations first occurred on

November 13, 2003.  The government argues that its motion for judgment on the record should

be granted because HUD's determination that plaintiffs did not occupy the Residence, and are

therefore not eligible for a RHP, is supported by the record and is not arbitrary or capricious.

Plaintiffs oppose the government's motion for judgment on the record on the grounds that

HUD's determination is arbitrary and capricious and contrary to law.  At the outset, plaintiffs

contend that the HUD Determination that plaintiffs did not occupy the premises is arbitrary and

capricious because the Court remanded in the 2006 Case for a determination of ownership.

Further, plaintiffs contend that the ION occurred in 2005 and not 2003.   Plaintiffs also contend

that HUD's determination that plaintiffs did not occupy the Residence was arbitrary and

capricious because plaintiffs constructively occupied the Residence.

11

(5:09 CV 1053)

## V.  STANDARD OF REVIEW AND ANALYSIS

A.      <u>Appeal of HUD Action - Standard of Review</u>

Plaintiffs' complaint is an appeal of the HUD Determination under the APA.  The APA requires the Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).  Under this standard of review, HUD's decision will only be set aside if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *The Kroger Company v. Regional Airport Authority of Louisville and Jefferson County*, 286 F.3d 382, 386-87 (6th Cir. 2002).

Under this standard of review, "the party challenging the agency's action must 'show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes and regulations.'"  *The Kroger Company v. Regional Airport Authority of Louisville and Jefferson County*, 286 F.3d at 389.  This standard of review is the "least demanding review of an administrative action.  If there is any evidence to support the agency's decision, the agency's determination is not arbitrary or capricious."  *Id.* (internal citations omitted).

The "focal point" of judicial review of an agency decision is the administrative record in existence, not a new record made in appealing the administrative decision.  Even if the agency's decision is unsupported by the administrative record, the reviewing court is not generally empowered to make a de novo inquiry and reach its own conclusion based on that inquiry.  In that case, the proper course is to remand to the agency for additional investigation or explanation.  *The Kroger Company v. Regional Airport Authority of Louisville and Jefferson*

12

(5:09 CV 1053)

*County*, 286 F.3d at 387.

B.     49 CFR § 24.402(a) - Replacement housing payment for 180-day homeowner-occupants

A RHP is available for persons displaced by federal and federally assisted programs who "has actually owned and occupied the displacement dwelling for not less than 180 days immediately prior to the initiation of negotiations."[8]

The initiation of negotiations (ION) is defined in relevant part as follows:

**§ 24.2 Definitions and acronyms.**

(a)     Definitions. . . . .

. . . .

(15) Initiation of negotiations. Unless a different action is specified in applicable Federal program regulations, the term initiation of negotiations means the following:

(i) Whenever the displacement results from the acquisition of the real property by a Federal Agency or State Agency, the initiation of negotiations means the delivery of the initial written offer of just compensation by the Agency to the

---

[8] **§ 24.401 Replacement housing payment for 180-day homeowner-occupants.**

(a) Eligibility. A displaced person is eligible for the replacement housing payment for a 180-day homeowner-occupant if the person:

(1) Has actually owned and occupied the displacement dwelling for not less than 180 days immediately prior to the initiation of negotiations; and

(2) Purchases and occupies a decent, safe, and sanitary replacement dwelling within one year after the later of the following dates (except that the Agency may extend such one year period for good cause):

. . . .

13

(5:09 CV 1053)

> owner or the owner's representative to purchase the real property for the project. However, if the Federal Agency or State Agency issues a notice of its intent to acquire the real property, and a person moves after that notice, but before delivery of the initial written purchase offer, the initiation of negotiations means the actual move of the person from the property.

49 C.F.R. 24.2(15)(i).

C.   <u>Analysis</u>

   1.   <u>HUD Properly Determined Eligibility for RHP on Remand from the 2006 Case</u>

   Plaintiffs argue that HUD disregarded the Court's instructions on remand to develop the record regarding ownership, and that HUD's determination that plaintiffs were not eligible for RHP based on occupancy is arbitrary and capricious.  However, the Court finds this argument to be without merit.

   The Court remanded the case to HUD "for further proceedings, **including** a more complete development of the record relating to the history of ownership of the Residence at 630 Diagonal Road."  Remand for further development of the ownership issue was only one aspect of the remand "**for further proceedings**."

   Additionally, there is no dispute that the law requires both occupancy and ownership in order to be eligible for RHP.  Plaintiffs' appeal of the first HUD determination regarding the amount of the RHP was remanded on the government's motion due to concerns regarding whether plaintiffs were even eligible for a RHP.  Eligibility for RHP requires satisfaction of two criteria - ownership and occupancy.  The entire point of the government's remand motion, and the Court's remand order, was to determine RHP eligibility.

14

(5:09 CV 1053)

Upon remand, HUD determined that ownership need not be addressed because the administrative record reflected that the plaintiffs were not occupying the Residence when the ION was made.  That determination alone is sufficient to disqualify the plaintiffs from RHP eligibility, even without a determination of ownership, because <u>both</u> ownership <u>and</u> occupancy are required for RHP eligibility.

While HUD did not determine ownership on remand, HUD did determine eligibility, which was the purpose of the remand by this Court.  Another remand to instruct HUD to determine ownership would be futile and not produce a different outcome because the administrative record supports HUD's determination that plaintiffs did not occupy the Residence as required prior to the ION.  Because RHP eligibility requires both occupancy and ownership, HUD's determination that the plaintiffs did not occupy the Residence renders the issue of ownership irrelevant and moot.

Accordingly, the Court concludes that HUD's determination plaintiffs were not eligible for RHP based on occupancy, rather than ownership, of the Residence as required by the regulations was not arbitrary and capricious because failure to satisfy either the occupancy or ownership criteria of the regulation is sufficient to negate eligibility.  By addressing the issue of occupancy, HUD fulfilled the objective of the Court's remand - to determine RHP eligibility.

2.      The Administrative Record Supports HUD's Determination
        that the Initiation of Negotiations occurred in November 2003

Plaintiffs argue in opposition to the government's motion for judgment on the record that the ION did not take place in 2003, and therefore HUD's determination that they did not occupy

15

(5:09 CV 1053)

the Residence at the ION was arbitrary and capricious.  The plaintiffs do not dispute that they

transferred ownership of the Residence to Thomas Faulknier for personal reasons in 2003, but

assert that they retained "equitable ownership."

Because Thomas Faulnier was the owner of record of the Residence, Faulknier was sent

an acquisition notice by the City of Akron in Summer 2003 and provided with a HUD document

advising him of the procedure for the appraisal and acquisition of the Residence.  AR 356.  Mr.

Faulknier apparently did not claim the certified letter containing this communication, and this

information was ultimately provided to Faulknier's attorney, Mr. Emershaw.   At that time, loan

documents secured by Mr. Faulknier for the Residence states that he occupied the Residence.

AR 380.  Other communications in the record from the City of Akron to an attorney representing

Mr. Faulknier and the Meachams reflect that Mr. Emershaw was provided with the City's written

offer to Mr. Faulknier, who was the owner of record of the Residence at the time, that the

Meachams were aware of the offer of $145,000, and that Mr. Meacham apparently verbally

rejected the offer on Mr. Faulknier's behalf in November 2003 at a meeting with the City of

Akron and Mr. Faulknier's attorney.  AR 359, 464-65.

Efforts by the City to secure a response from Mr. Faulknier to purchase the Residence

extended into 2004.  The record reflects that in March 2004, the City of Akron contacted Mr.

Emershaw by letter about Mr. Faulknier's response to the City's offer of $145,000 for the

Residence, which was determined by an MAI appraiser to represent the fair market value for the

Residence.  AR 359.  The record reflects that when efforts to purchase the Residence from Mr.

Faulknier proved fruitless, the City began the process to acquire the Residence by process by

16

(5:09 CV 1053)

eminent domain.

Under the arbitrary and capricious standard of review, "[i]f there is any evidence to support the agency's decision, the agency's determination is not arbitrary or capricious." *Kroger*, 286 F.3d at 389.  In this case, the record reflects that an appraisal conducted in 2003 valued the Residence at $145,000, that an offer of $145,000 was made to Mr. Faulknier both directly and through his representative, and that Mr. Meacham, who claimed to speak for Mr. Faulknier regarding the Residence, was also aware of the offer and participated in meetings with the City of Akron regarding the City's offer to purchase the Residence.

The Court finds that there is evidence in the administrative record which supports HUD's determination that the ION took place in November 2003.  Plaintiffs have not established that HUD's conclusion that the ION took place in November 2003 has no rational basis in the administrative record.  Accordingly, the Court concludes that HUD's determination regarding the commencement of the ION in 2003 is not arbitrary and capricious.[9]

_____

[9] The Meachams argue that there is also evidence in the administrative record to support a conclusion the ION took place in 2005, not 2003.  However, even if there is information in the administrative record that could support a different conclusion, that information was before HUD as part of the administrative record.  HUD concluded, based on the entire record before it, that the ION commenced in 2003.  That conclusion is supported by evidence in the administrative record.  After considering the record in its entirety, the Court concludes that HUD's determination that the ION commenced is 2003 is supported by evidence in the record, and is not arbitrary and capricious.  *See Wilson Air Center, LLC v. Federal Aviation Administrator*, 372 F.3d 807, 812-813 (6th Cir. 2004).  The Court notes that even supposing the ION occurred in 2005, the 2005 appraisal reflected that the Residence was vacant, and Barbara Meacham testified at the appropriation proceeding that she occupied the Residence "on and off" due to the ongoing rehabilitation of the Residence.

17

(5:09 CV 1053)

    3.    <u>Plaintiffs Did Not Constructively Occupy the Residence</u>

Plaintiffs argue that the HUD Determination regarding occupancy is arbitrary and capricious because they constructively occupied the Residence.  In support of this position, plaintiffs cite *Nagi v. U.S.*, 751 F.2d 826 (6th Cir. 1985).  To the extent that the Meachams did not occupy the Residence before the initiation of negotiations, plaintiffs argue that they were unable to do so for reasons beyond their control, and therefore their occupancy was "constructive."  Plaintiffs claim that they were prevented from occupying the Residence because "while repair and renovation was ongoing in 2003, the City of Akron served upon the Meachams a cease and desist order prohibiting th[e]m for continuing.  Therefore, to the extent that the Meachams were unable to occupy the residence seven days a week, 24 hours a day 180 days before September 13, 2005 they were unable to do so for reasons beyond their control."  ECF 24, p. 11.[10]

Plaintiffs' constructive occupancy argument is not supported by the law or the facts.  The regulatory exceptions to the occupancy requirement for RHP eligibility and *Nagi* require displacement from the Residence for reasons beyond the owners control.  *See* 49 C.F.R. 24.403(d).  Plaintiffs received the insurance proceeds from the 1998 fire at the Residence in 2001.  These proceeds were not used to restore the Residence.  AR 277-280.  Even in 2005, an

---

[10] To the extent plaintiffs' argument of constructive occupancy and ownership is premised upon their position that the ION took place in 2005, not 2003 as determined by HUD,  the premise for plaintiffs' constructive occupancy argument fails since the Court concludes that HUD's determination that the ION took place in 2003 was not arbitrary and capricious.

(5:09 CV 1053)

appraiser noted that the property was vacant.[11]  Plaintiffs' failure to use the insurance proceed to repair the fire damage to the Residence negates their argument that their absence from the Residence - whether in 2003 or 2005 - was beyond their control.

## VI.  CONCLUSION

After reviewing the administrative record in its entirety, the Court finds plaintiffs have not established that the HUD Determination has no rational basis, and further finds that HUD's determination that plaintiffs are not eligible for a Replacement Housing Payment is supported by evidence in the administrative record.  The Court concludes that the HUD Determination that plaintiffs are not eligible for a Replacement Housing Payment is not arbitrary or capricious, or contrary to law.  Accordingly, the government's motion for judgment on the record (ECF 23) is GRANTED.

IT IS SO ORDERED.

  September 29, 2010                          /s/ David D. Dowd, Jr.
Date                                       David D. Dowd, Jr.
                                           U.S. District Judge

---

[11] March 31, 2005 appraisal by Kristin Cross and Roger Sours: "The subject dwelling is currently vacant."  AR 204.  Barbara Meacham testified at the eminent domain proceeding that she occupied the Residence "on and off" because of repairs needed to the Residence.  Even if plaintiffs prevailed in their argument that the ION occurred in 2005, the administrative record is replete with evidence supporting a conclusion that, (cont'd) even at that time, they did not satisfy the occupancy requirement for RHP eligibility.